**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES RICHARDSON, as an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THD AT-HOME SERVICES, INC., a Delaware corporation; HOME DEPOT U.S.A., INC., a Delaware corporation; MEASURECOMP, LLC, a Michigan limited liability company, and DOES 1 through 50, inclusive,<br><br>    Defendant.<br>_____ / | Case No. 1:14-cv-0273-BAM<br><br>**ORDER REGARDING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2)PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT AWARD**<br><br>(Docs. 53, 54) |

   Plaintiff James Richardson ("Plaintiff" or "Richardson"), on behalf of himself and all others similarly situated seeks final approval of a class settlement reached with Defendants THD AT-Home Services, Inc., Home Depot U.S.A., Inc., and Measurecomp, LLC, ("Defendants"). (Doc. 54). In addition, Plaintiff seeks an award of Attorney Fees, Costs and approval of the class representative enhancement payment. (Doc. 53). Defendants do not oppose the motion. The Motion was heard on March 4, 2016, before United States Magistrate Judge Barbara A. McAuliffe. Counsel Kenneth Yoon appeared in person on behalf of Plaintiff. Counsel Donna Mezias appeared by telephone on behalf of the Defendants. Having considered the motion, argument presented at the hearing, as well as the Court's file, Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED (Doc. 54)

and Plaintiff's Motion for Attorneys' Fees, Costs, and Enhancement Award is GRANTED IN PART and DENIED in PART. (Doc. 53).

## BACKGROUND

Plaintiff is a former measure tech who worked for MeasureComp, LLC in California from November 2011 to May 2012. MeasureComp was acquired by THD At-Home Services, Inc. ("AHS") in May 2012. Richardson became an employee of AHS starting in May 2012, and continued to work as a measure tech for THD until February 2015.

On January 23, 2014, Plaintiff filed his Complaint in Fresno County Superior Court against Defendants for alleged violations of the California Labor Code. (Doc. 1 at 2). On February 27, 2014, Defendants removed the case to this Court. (Doc. 1). Richardson alleges that Defendants violated California wage and hour law by failing to (i) compensate employees for all regular and overtime hours worked, (ii) provide meal periods and rest breaks, (iii) provide accurate wage statements, (iv) reimburse all necessary business expenses, and (v) pay all wages owed upon termination. Second Amended Complaint ("Complaint"), ¶¶ 28-66. Based upon these allegations, Plaintiff asserts claims under sections 226.7, 1194, 2802, 203, and 226 of the California Labor Code, California Business and Professions Code section 17200, et seq., and the Private Attorneys General Act of 2004 ("PAGA"). Complaint, ¶¶ 28-66.

Plaintiff brought this action as a putative class action seeking to represent a class of all persons employed by AHS and/or MeasureComp as measure techs in California between January 23, 2010 and the present. *Id.* at ¶ 16. The parties reached a settlement before Plaintiff moved for class certification.

On August 2, 2015, Plaintiff moved for preliminary approval of the class action settlement, which Defendants did not oppose. (Doc. 40). On September 18, 2015, the Court preliminarily approved the class action settlement. (Doc. 51). The preliminary approval conditionally certified the settlement class, preliminarily approved the settlement agreement, approved the distribution of the class notice, confirmed the selection of CPT Group, Inc. as the claims administrator, and scheduled the final approval and fairness hearing for March 4, 2016. (Doc. 51).

Plaintiff now seeks final approval of the class action settlement, including approval of the following:

(1)    the settlement as fair, adequate and reasonable, and in the best interests of the settlement class;

(2)    that the class representative is suitable;

(3)    that class counsel is suitable;

(3)    the settlement of civil penalties in the amount of $7,500 to the California Labor and Workforce Development Agency as the State's portion of the PAGA payment;

(4)    claims administration expenses in the amount of $8,000 to CPT Group, Inc. as settlement administrator;

(5)    payment to class members pursuant to the procedures in the Settlement Agreement;

(6)    incentive awards for class representative James Richardson in the amount of $20,000.00;

(7)    attorneys' fees and costs ($383,333.33 in fees and $25,000 in costs); and

(8)    entry of judgment.

(Doc. 54).

## I.    Final Approval of the Settlement

### A.  Legal Standard

When "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Generally, review of a proposed settlement proceeds in two phases. *True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed settlement is within the range of possible approval and whether or not notice should be sent to class members. *Id.* at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re*

*Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the Court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. *True*, 749 F.Supp.2d at 1063. "In evaluating a proposed settlement, '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998)).

## B. Discussion

### 1. Terms of Settlement

The class consists of Plaintiff and any individuals employed by THD At-Home Services, Inc. and/or Measure Comp, LLC as measure techs in California at any time between January 23, 2010 and July 16, 2015, excluding any persons whose claims were released in connection with the class settlement in *Mejia v. MeasureComp, LLC*, Los Angeles Superior Court, No. BC 409729. Under the terms of the settlement, the parties have agreed that Defendants will pay a gross settlement amount of up to $1,150,000.00 (Settlement Agreement ("Agreement") ¶ IV.D.1., Doc. 40-1, Ex. A). The $1,150,000 amount includes:

> (a)     attorneys' fees up to one third of the settlement amount;
>
> (b)     reasonable litigation costs necessary to prosecute and settle this litigation and administer the Agreement up to $25,000;
>
> (c)     a $20,000 enhancement award to Plaintiff;
>
> (4)     PAGA penalties of $10,000, 75 percent to be paid to California and 25 percent to remain part of the settlement fund; and
>
> (5)     settlement administration costs up to $8,000. *Id.*, ¶¶ IV.D.1-IV.D.6.

The $1.15 million is the maximum amount that Defendants are required to pay under the settlement. *Id.*, IV.D.1. After subtracting the above items, the remaining settlement fund (estimated at $703,667) will be distributed on a pro-rata basis to class members based upon the estimated value of their claims, which will be calculated by dividing the total weeks worked by each individual class member by the total weeks worked by all members of the settlement class during the settlement class

period. Agreement, ¶ IV.E.1. The average sum for each settlement class member will be about $4,920.4 Class members will be solely responsible for paying any taxes owed due to receiving payments pursuant to the Agreement. *Id.,* ¶ IV.E.2.

### 2. Service of Notice Packets and Responses Received

The Court finds that the notice to the settlement class, as described in the September 18, 2015 order preliminarily approving the class settlement, provided the best practicable notice to the class members and satisfied the procedures of Due Process. The Class Notice described the key elements of the proposed settlement, advised settlement class members of their right to dispute their share of the settlement, their right to be excluded from the settlement class, and of each settlement class member's right and opportunity to object to the Settlement. (Doc. 54 at 5-6).

Consistent with preliminary approval of the settlement, Defendants provided the Claims Administrator, CPT Group, with the last known addresses of all settlement class members and on November 2, 2015, CPT Group mailed 143 settlement notice packets, in the form approved by the Court. *See* Declaration of Tim Nguyen ("Nguyen Decl."), ¶ 2 (Doc. 54-2). Of the settlement notice packets initially mailed to class members, only 10 were returned as undeliverable. *Id.* ¶ 3. For each of these 10 returned packets, CPT Group performed an address search and was able to locate and re-mail notices for six of them, only one of which was returned. *Id.* In the end, CPT Group is aware of only five class members whose notice packets were undeliverable. *Id.* CPT Group did not receive any requests to be excluded from the settlement and none of the 143 class members have objected. *Id.*

The Court finds that the procedures employed were adequate to satisfy Due Process.

### 3. Class Certification

Based on the showing made by the parties in support of the Motion for Preliminary Approval and the Motion for Final Approval and as discussed more fully in the Preliminary Approval Order, the Court finds the parties have met their burden as to the prerequisites for class certification set forth in Rule 23(a) and (b)(3).

Specifically, the Class includes an estimated 143 persons and is therefore so numerous that joinder is impracticable. (Doc. 51 at 3). As to commonality, the Class presents common questions of law and fact arising out of Defendants' uniform policies and practices. The typicality requirement is

fulfilled because Plaintiff's claims arise from the same policies and procedures similarly impacting all class members. The adequacy requirement is met because Plaintiff will fairly and adequately represent the interests of the Class, and the attorneys at the Law Offices of Kenneth H. Yoon are experienced class counsel knowledgeable in the applicable areas of the law.

As to the requirements of Rule 23(b)(3), the Court finds that common issues predominate over individual issues. In particular, Defendants' policies and practices apply class-wide, and resolution through a single class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Other alternatives to a single class action, such as individual complaints filed with Labor and Workforce Development Agency, would have been ineffective in addressing the issues on a class-wide basis.

**4.** **Settlement Approval Factors Support the Agreement**

A proposed class action settlement may be approved if the Court, after class members have an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Further, the Ninth Circuit has identified a non-exhaustive list of factors that a district court may consider when assessing whether a class action settlement agreement meets this standard: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963. Additionally, where the settlement occurs before formal class certification, the Court must also ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011) (internal citations omitted).

As discussed below, the Court finds that the proposed settlement is fair, reasonable and adequate, and recommends final approval.

The Strength of Plaintiff's Case

The first factor, the strength of Plaintiff's case, favors settlement. Plaintiff claims that Defendants denied proper meal and rest breaks, failed to pay minimum and overtime wages for

commute time and prep work, and failed to pay appropriate mileage pay. Defendants contend that they maintained lawful policies at all times.

Plaintiff recognizes that recent case law, including *Ordonez v. Radio Shack, Inc*., No. CV 10-7060-CAS, 2013 WL 210223 at *8 (C.D. Cal. Jan. 17, 2013) (denying certification of meal break claim where defendant had lawful written policy) and *Brinker Restaurant Corp v. Superior Court*, 53 Cal.4th 1004 (Cal. 2012), created obstacles to Plaintiff's ability to certify a class, particularly with respect to meal and rest break claims. (Doc. 54 at 4). Plaintiff further acknowledges significant challenges posed by continued litigation. Based on legal uncertainties regarding class certification in wage and hour cases, even a relatively strong case on the merits may not satisfy the standards for certification. Plaintiff asserts that these realities, which added to the risk of continued ligation, militate in favor of settlement. The Court agrees. Given the nature of the claims, this factor weighs in favor of settlement.

The Risk, Expense, Complexity, and Likely Duration of Further Litigation

For the same reasons discussed above, the second factor, the risk, expense, complexity and likely duration of further litigation, favors settlement. Plaintiff admits that there would be significant risks in continued litigation. Without settlement, the parties would expect to engage in further discovery. There would likely be briefing on the class certification issue and summary judgment. Trial would involve extensive testimony from numerous witnesses. And any final judgment would likely be appealed, thereby extending the duration of the litigation. Settlement at this stage of the litigation avoids further expense and further provides immediate relief to the class members alleviating them from having to wait for relief or bearing the risk that Defendants could prevail at trial. (Doc. 54 at 10).

Given the risk of the class not receiving any recovery or receiving delayed recovery, substantially reduced in value by extensive costs and protracted litigation expenses, this factor weighs in favor of approving class settlement.

The Amount Offered in Settlement

The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in

settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625, 628.

In this case, the proposed gross settlement amount totals $1,150,000. (Doc. 54 at 6, Agreement ¶ IV. D. 1). Of this, class members will share in a net settlement amount preliminary estimated at $700,000.00 (Doc. 54 at 11). Class counsel believes that the settlement total represents a very favorable result because the average payout per class member will total approximately $4,920, which is a substantial benefit. (Doc. 54 at 11). Based upon the parties' agreement that this amount provides adequate compensation for class members, the Court finds the amount offered supports approval of the class settlement.

<u>The Extent of Discovery Completed, and the Stage of the Proceedings</u>

The Court finds that the extent of discovery completed and the stage of proceedings favors final approval. The parties have been actively litigating this action since its initiation in 2014. Plaintiff reports that the parties engaged in extensive written discovery. Defendants produced Plaintiff's personnel file; policies regarding timekeeping, payroll, meal periods and rest breaks, business expense reimbursements, and the payment of wages; and class-wide timekeeping and payroll data and expense reimbursement records. (Doc. 54 at 12). Plaintiff also took the deposition of Jason Honey, THD At Home Services' market manager, regarding Defendants' policies regarding meal periods and rest breaks, timekeeping and payroll, and reimbursement of business expenses. *Id.* This action settled following mediation, but before completion of briefing on Plaintiff's class certification and before the matter proceeded to additional fact discovery or trial. Taken together, the information produced in discovery was more than sufficient for the parties to evaluate fully the strengths and weaknesses of Plaintiff's claims and class position. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement despite limited discovery, since parties had ample information to evaluate asserted claims and defenses). Consequently, this factor supports approval of the Settlement.

///
///

<u>The Experience and Views of Counsel</u>

The Court finds that the experience and views of class counsel favor final approval. Class counsel, the Law Offices of Kenneth H. Yoon, has extensive experience in complex employment litigation. *See* Declaration of Kenneth Yoon, ("Yoon Decl."), ¶¶ 19-22 Preliminary Approval, (Doc. 40-1 at 6). Following a thorough investigation, Plaintiff's counsel were able to realistically assess the value of the claims and are of the opinion that the settlement is fair, reasonable, and adequate to the proposed class, because it reflects a reasoned compromise that takes into consideration the inherent risks in all employment class litigation and in particular this action. Yoon Decl. ¶¶ 14-16.

<u>The Reaction of the Class Members to the Proposed Settlement</u>

The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members. *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010).

Significantly here, no objections were filed by class members following service of the Class Notice Packet. Notice of the proposed settlement was sent to class members in accordance with the Court's Preliminary Approval Order. More than 95 percent of the notice packages were successfully mailed in the first mailing, and nearly every member of the settlement class received notice of the proposed settlement. Class members were informed of their right to object to or opt out of the settlement and were provided 60 days to do so. No objections were filed and no class members requested to be excluded. These facts all indicate approval of the settlement by the entire class. Accordingly, this factor favors final approval of the settlement. *See Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections filed and one of 2,765 class members requested exclusion from settlement).

<u>Arm's Length Negotiation and Absence of Collusion</u>

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Here, the parties reached agreement after two full days of mediation, aided by a mediator with extensive experience mediating wage and hour class claims.

(Doc. 54 at 14). Participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co*., No. 09-00261, 2012 U.S. Dist. LEXIS 166704, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation omitted). Based on the record before the Court, there is no indication of collusiveness between the parties; no indication of preferential treatment between Plaintiff and class members; and the agreement appears to be within the range of possible approval.

<u>Conclusion</u>

The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement, which is fair, reasonable, and adequate as required by Rule 23. Therefore, final approval of the Settlement Agreement is GRANTED.

## II. Motion for Attorneys' Fees and Costs

Next, the Court must determine whether the requested attorneys' fees, costs, and the class representative's incentive award are fair and reasonable. Class Counsel seeks an award of $383,333.33 in attorneys' fees, or 33% of the $1,150,000 common Settlement fund, as well as $25,000 in expenses, and a $20,000 incentive award for the Class Representative. For the reasons set forth below, the Court GRANTS Plaintiff's Motion in Part but reduces the attorneys' fees and incentive award as set forth below.

### A. Attorneys' Fee Award

With respect to attorneys' fees, the Settlement Agreement provides that "Defendants will not oppose a request by Class Counsel for an award of Attorneys' Fees up to one third of the settlement fund as payment for attorneys' fees" (Doc. 40-1, Ex. A, Settlement Agreement ¶ D. 5). On December 14, 2015, Plaintiff filed a motion for an award of attorneys' fees seeking the full $383,333.33 in fees from the settlement fund. (Doc. 53 at 7). At the hearing on March 4, 2016, the Court requested supplemental briefing from class counsel regarding the reasonableness of the anticipated fee award. (Doc. 55). Plaintiff's counsel submitted that supplemental briefing on March 17, 2016. (Doc. 56).

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions, such as this one, federal courts apply state law to determine the right to fees and the method

for calculating fees. *See Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011).

Under California law, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal.3d 25, 34, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977). A common fund results when "the activities of the party awarded fees have resulted in the preservation or recovery of a certain or easily calculable sum of money—out of which sum or 'fund' the fees are to be paid." *Id.* at 35, 141 Cal.Rptr. 315, 569 P.2d 1303. Here, the Settlement Agreement creates a Gross Settlement Amount, i.e., a common fund, out of which reasonable attorneys' fees will be paid. (Doc. 40-1, Ex. A, Agreement ¶ D 1.).

California courts employ two methods when calculating a reasonable award of attorneys' fees in common fund actions. *See Lealao v. Beneficial Cal., Inc.*, 82 Cal.4th 19, 27 (2000). The first method calculates attorneys' fees based on a percentage-of-the-benefit bestowed upon the class. *Id.* at 26 ("Percentage fees have traditionally been allowed in such common fund cases, although, as will be seen, the lodestar methodology may also be utilized in this context."). The second method utilizes a lodestar, which is determined by multiplying the hours counsel reasonably expended by a reasonable hourly rate, which may then be enhanced by a multiplier. *Id.* Regardless of the method, "[t]he ultimate goal . . . is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation . . . . It is not an abuse of discretion to choose one method over another as long as the method chosen is applied consistently using percentage figures that accurately reflect the marketplace. *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557, 96 Cal.Rptr.3d 127 (2009).

### 1. Percentage of the Fund

According to the Ninth Circuit, an attorney fee of 25% of the recovery is the "benchmark" that should be awarded in common fund cases. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or

other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). California courts, however, do not prescribe the 25% benchmark that is established under federal law in the Ninth Circuit as a starting point to evaluate fee requests. *See Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, 2012 WL 2117001 at *47 (E.D. Cal. June 11, 2012) (citing 1 *Richard M. Pearl, California Attorney Fee Awards*, §§ 8.12-8.15 (3d ed. 2012). Nonetheless, the 25% benchmark is a helpful assessment tool in evaluating the requested fee award, even where use of the benchmark is not required. *Schiller*, 2012 WL 2117001 at *47. As there is no definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach, the Court considers the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25% award as a starting point.

The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. *Vizcaino*, 290 F.3d at 1048. In *Vizcaino*, the Ninth Circuit identified factors a district court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved, (2) the risk involved, (3) counsel's performance and quality of work, and (4) financial burden on attorney. *Id.* at 1048-50.

Class Counsel contends that an award over the traditional 25 percent benchmark is appropriate here given the results achieved and the specialized skills used by counsel in order to negotiate a quick settlement.[1] Counsel explains that his computer science background and statistics education provided a high degree of skill that ultimately saved litigation time and costs. (Doc. 56 at 3). Using his computer science background, counsel performed an extensive review of voluminous documents. Finally, in support of the award, counsel points to the contingent nature of the litigation and to the fact that the fees sought here are essentially equal to class counsel's total lodestar.

Plaintiff provides the following arguments concerning the relevant *Vizcaino* factors:

///

---

[1] The difference between the benchmark of 25% and the request for 33% is approximately an additional $96,000 in attorneys' fees.

The Results Achieved

The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award. *In re Omnivision Technologies, Inc*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (*citing In re Heritage Bond Litig*., 2005 U.S. Dist. LEXIS 13627, 2005 WL 1594403, at *8 (C.D. Cal. June 10, 2005). Through this Settlement, counsel obtained a $1.15 million dollar non-reversionary fund for the 143 class members. The average recovery for the class members who submitted claims will be over $5,000 each. The settlement is an excellent result for the class as these types of claims would not generally produce substantial individual damage awards. Overall, the Court finds that the results achieved are good, which is highlighted by the fact that there was no objection to the settlement amount or to the attorneys' fees requested. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004). The results achieved weigh in favor of granting the requested fees.

The Risks Involved

As to the second factor, Plaintiff asserts that counsel assumed a contingency risk in prosecuting this action. According to Plaintiff, the risks associated with this case were substantial given "the constantly shifting legal landscape of class action litigation" which provides a significant chance that any class certification order or judgment in favor could be overturned on appeal. (Doc. 53 at 13). The risks associated with this case were additionally substantial given the challenges of obtaining class certification and establishing liability on Plaintiff's wage and hour claims. *See, e.g., Ordonez v. Radio Shack*, No. 10-7060-CAS (JCGx), 2013 WL 210223, *6, 10 (C.D. Cal. Jan. 17, 2013) (court declined to certify class because individual issues predominated in rest break claims despite evidence of unlawful policy). However, the risks associated with this case are no greater than that associated with any other wage and hour action and no extraordinary risks exist that would support an increase from the 25% benchmark. *See Clayton v. Knight Transp*., 2013 WL 5877213, 2013 U.S. Dist. LEXIS 156647, 21-22 (E.D. Cal. Oct. 30, 2013)(noting that the risk involved in wage and hour cases is not extraordinary or unique).

Skill Required and Quality of Work

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award. *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, 2011 WL

10483569 at *5-6 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members");

Here, Class Counsel asserts their specialized skills and the quality of work support an award greater than the benchmark in this action. (Doc. 53 at 13). According to Plaintiff, Class Counsel's specialized experience in computer science and mathematics assisted in communicating class issues for certification and manageability, which other lawyers without that training may have found more challenging. Class counsel also reports that they were able to prepare significant aspects of the case without the assistance of multiple experts which facilitated in saving time and expense to the class.

The Court agrees that the specific skill set that Class Counsel utilized in effectuating a settlement was a crucial factor in the excellent results achieved on behalf of the class. Particularly notable here is Class Counsel's background in computer science and economic theory which allowed counsel to investigate many preliminary claims, and analyze Defendants' documents and data to assess potential exposure without the help of numerous expensive experts. With the assistance of one retained expert consultant, class counsel developed theories of certification and liability after studying Defendants' policies and records, and identified labor code violations based on Defendants' data. The ability to develop certification theories and trial management plans without solely relying on retained experts is an important factor in litigating this case towards settlement. This factor cuts in favor of an award above the benchmark.

<u>The Contingent Nature of the Representation and the Associated Burden</u>

With respect to the contingent nature of litigation, the Ninth Circuit has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark. *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 942 n.7 (observing "whether the fee was fixed or contingent" is "no longer valid" as a factor in evaluating reasonable fees); *but see In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 954-55 (9th Cir. 2015) (finding the contingent nature of litigation remains a relevant factor to evaluate a request from the common fund).

14

Class Counsel asserts that they assumed a very real risk in taking this case on a contingency basis, investing time, effort, and out of pocket costs, in the action with no guarantee of recovery. (Doc. 53 at 14). In considering both the contingent nature of the work performed by Class Counsel as well as the risk involved in the costs advanced, this factor weighs slightly in favor of a departure from the benchmark fee award. *See Rosales v. El Rancho Farms*, 2015 U.S. Dist. LEXIS 95756 (E.D. Cal. July 21, 2015) (approving a slight upward departure from the benchmark based in part on the contingent nature of the case).

### 2. Lodestar Crosscheck

The Ninth Circuit encourages district courts "to guard against an unreasonable result" by cross-checking attorneys' fees calculations against a second method. *In re Bluetooth*, 654 F.3d at 944. "The 'lodestar' is calculated by multiplying the number of hours . . . reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "Once the Court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Thayer v. Wells Fargo Bank*, N.A., 92 Cal. App. 4th 819, 833, 112 Cal. Rptr. 2d 284 (2001) (citation omitted).

"In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award." *In re Portal Software, Inc. Sec. Litig.* ("Portal Software"), No. C-03-5138-VRW, 2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201, at *14 (N.D. Cal. Nov. 26, 2007). The requested award here is $383,333.33, which represents a requested fee of 33 percent of the $1,150,000 Settlement Amount.

The next step is to cross-check the proposed percentage fee against the lodestar. *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)." *In re HPL Techs., Inc. Secs. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005). The first step in determining the lodestar is to determine whether the number of hours expended was reasonable. *Fischer v. SJB-P.D. Inc.*, 214 F.3d

1115, 1119 (9th Cir. 2000). However, when the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours." *See Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, 2012 WL 2117001 at *20 (E.D. Cal. June 11, 2012); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D. Cal. 2007)). Second, in analyzing the hourly rate, under both federal and state law, a Court must consider the prevailing market rate charged by attorneys of comparable experience, expertise, and skill for comparable work in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (Cal. 2004) (explaining that hourly rates are determined by comparable legal services in the relevant community); *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal. App. 4th 972 (Cal. App. 1st Dist. 2013) (in determining hourly rates, the court must look to the "prevailing market rates in the relevant community." The rates of comparable attorneys in the forum district are usually used). Third, the multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness. *Portal Software*, 2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201, at *14.

### A. Adjusted Lodestar

Class counsel consists of two attorneys: senior lead attorney Kenneth H. Yoon and associate Stephanie E. Yasuda. Plaintiff calculated a lodestar amount totaling $331,722.50, based on varying rates ranging from $400 per hour for Ms. Yasuda to $695.00 for Mr. Yoon. *See* Declaration of Kenneth Yoon ("Yoon Decl."), (Doc. 53-1 at 12). Counsel attests that their lodestar amount is based on 558.2 hours of work over two years. (Doc. 53-1 at 5). *See* Yoon Decl., Ex. A at 9. Plaintiff asserts that the lodestar cross-check supports the reasonableness of his fee request because the lodestar calculation—a little over 28% of the common fund—is akin to the 33% contemplated in the settlement agreement. (Doc. 53 at 16). Assuming the hours reported are reasonable, the fees requested are "a modest" 1.15 times the lodestar calculated by Class Counsel. (Doc. 53 at 17).

Significantly, however, the hourly rates presented by Mr. Yoon and Ms. Yasuda to calculate this amount exceed those generally awarded in the Fresno Division of the Eastern District of California. At the hearing, the Court questioned counsel about the appropriate community for determining attorney rates. Plaintiff argued that class counsel should be awarded the prevailing rates

for Los Angeles and not Fresno.  Plaintiff further explained that before filing his lawsuit in this Court, he called several local and non-local attorneys, none of whom would take his case until he spoke with Mr. Yoon.  *See* Declaration of James Richardson ("Richardson Decl.") ¶ 13, (Doc. 53-3 at 4). Plaintiff was given a further opportunity to address the appropriate hourly rates for cases initiated in the Fresno division in his supplemental declaration, but failed to do so. *Blum v. Stenson*, 465 U.S. 886, 895-96, 895 n.11 (1984) (the fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").  Consequently, Mr. Yoon's declaration is insufficient to justify Plaintiff's proposed hourly rates.

Pursuant to both Ninth Circuit authority and cases in the Eastern District, the "relevant community" for purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds. *See, e.g., Davis v. Brown Shoe Co*., 2015 U.S. Dist. LEXIS 149010 (E.D. Cal. Nov. 3, 2015); *Barjon v. Dalton*, 132 F.3d 496, 500 (1997); *Torchia v. W.W. Grainger, Inc*., 304 F.R.D. 256, 276 (E.D. Cal. 2014).  Plaintiff has not presented any reason to deviate from the application of Fresno rates for Fresno cases.

Recently, rates for the Fresno Division have been identified between $250 and $380, with the highest rates reserved for attorneys with more than 20 years of experience. *Sanchez v. Frito-Lay, Inc*., 2015 U.S. Dist. LEXIS 102771, 2015 WL 4662636, * 18 (E.D. Cal. Aug. 5, 2015); *Torchia*, 304 F.R.D. at 276. For those attorneys with less than 10 years of experience, the expected range is between $175 and $300 per hour, with attorneys having four and five years of experience being awarded $200 per hour. *Sanchez*, 2015 U.S. Dist. LEXIS 102771, 2015 WL 4662636 at *18; *Torchia*, 304 F.R.D. at 276; *Rosales v. El Rancho Farms*, Case No. 1:12-cv-01934-AWI-JLT, 2015 U.S. Dist. LEXIS 95756, 2015 WL 4460918, *24-25 (E.D. Cal. Jul. 21, 2015) (applying rate of $380/hour for attorneys in practice 20 years or more; $350/hour for attorneys in practice between 15 and 20 years; $300/hour for attorneys in practice between 10 and 15 years; $225/hour for attorneys in practice between 5 and 10 years; $175/hour for attorneys in practice less than five years) (findings and recommendations adopted October 2, 2015).

Applying Fresno Division rates based on the $250-$380 range, and consistent with those assigned in *Davis*, hours for senior lead attorney Kenneth Yoon, who has been in practice since 1998 will be calculated at the rate of $350 per hour. For attorney Stephanie Yasuda, who has been in practice since 2009, the hourly rate is adjusted to $225 per hour. With these rate adjustments to prevailing market rates, the lodestar amount is reduced by $159,177.50 to a total of **$172,545.00.**

### B.     Amount of Fees to be Awarded

Significantly, there is a strong presumption that the lodestar is a reasonable fee. *Torchia,* 304 F.R.D. at 277.  However, adjustments to increase or decrease the lodestar amount are sometimes appropriate and justify the use of a "lodestar multiplier." *Clark v. City of L.A.*, 803 F.2d 987, 991 (9th Cir. 1986); *see also Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel*, 307 F.3d at 1008.  Generally, a district court has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment. *Fischel*, 307 F.3d at 1008; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig. v. Exxon Corp.*, 109 F.3d 602, 609 (9th Cir. 1997).

Here, the requested fee of $383,333.33 is greater than the lodestar calculated by Class Counsel of $331,722.50. This would result in a multiplier of approximately 1.15.  Significantly, however, as seen above, the hourly fees used to calculate this amount must be reduced to reflect the market rate within this community.  With these rate adjustments to prevailing market rates the lodestar amount is reduced to a total of $172,545.00.  Accordingly, the requested fees of $383,333.33 would result in a multiplier of approximately 2.22.[2]

To determine whether the lodestar multiplier is reasonable, the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of

---

[2]     The "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997,1008 (9th Cir. 2002).  Here, a multiplier of 2.22 is calculated by dividing $383,333.33 by the adjusted lodestar of $172,545.00.

other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id*. at 1007, n. 7 (*citing Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)); *see also Bond*, 2011 U.S. Dist. LEXIS 70390, 2011 WL 2648879, at *13.

Here, Plaintiff contacted several local and non-local attorneys who all refused to take his case until Mr. Yoon agreed to do so. After contacting Mr. Yoon, Class Counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. The contingent nature of the representation has resulted in Class Counsel litigating this matter for approximately two years without compensation. Counsel also achieved an excellent result and generated a significant benefit for the class. Each class member will receive approximately $5,000, which is substantial given the nature of Plaintiff's claims. Also of significant importance to the Court is Class Counsel's unique and distinct skill set which ultimately provided cost savings to the Class. As discussed above, Mr. Yoon has formal education in computer systems and databases which played an important role in the analysis of Defendants' computerized records for purposes of identifying class-wide issues. This formal education in mathematics, statistics and computer science provided advanced knowledge to litigate this wage and hour class action to an efficient resolution. Taken together, these factors justify an upward adjustment above the benchmark.

However, even given the risks inherent to this case, the results obtained, and the specialized skill counsel used to achieve settlement, the Court finds that other factors weigh against granting a 33% fee award. Settlement was achieved quite early in the litigation and as a result, Class Counsel was not faced with a dispositive motion challenging the merits of Plaintiff's claims. The parties also attended mediation before filing a motion for class certification and consequently there was little in the way of motion practice prior to seeking approval of the Settlement.[3] Moreover, Plaintiff does not

---

[3]  On November 14, 2014, Plaintiff filed a motion to compel (Doc. 16), which the Court resolved informally on December 5, 2014. (Doc. 20). Subsequently on January 2, 2015, Plaintiff filed a motion for leave to file a second amended complaint. Defendants filed a limited opposition to the motion agreeing to the majority of Plaintiff's proposed

19

allege that he faced any complicated factual issues nor does this action appear to have hampered Class Counsel's ability to take on other cases.

Thus, the Court has considered the totality of the circumstances in the award of attorney fees. Ultimately, because Plaintiff received an excellent result in this action, coupled with class counsel's specific and unique skill set that reduced costs to the class, the Court finds that an above benchmark award of 30% is justified here. This balancing takes into account the original request for an upward adjustment of the percentage-of-fund amount from 25% to 33%, and the significantly lower lodestar cross-check. This percentage of the common fund is also supported by other cases in this district where Court's concluded that a 30 percent or higher award was appropriate in wage and hour class actions where class counsel achieved an excellent result and earned fees for the class in excess of what class counsel would receive. *See, e.g., Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 2013 U.S. Dist. LEXIS 93194, 2013 WL 3340939 (E.D. Cal. 2013) (court approved attorney's fees in the amount of 33.3 percent of the common fund in a wage and hour class action); *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 2648879, 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011) (court approved attorneys' fees in the amount of 30 percent of the common fund); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund); *Baganha v. Cal. Milk Transport*, No. 1:01-cv-05729-AWI-LJO (class-action settlement where court approved attorneys' fees in the amount of 31.25 percent of settlement amount). Accordingly, the Court GRANTS Class Counsel's request for attorneys' fees in the modified amount of $345,000.00 which is 30% of the gross settlement amount.

### 3. Costs

Counsel asks for an award of costs of $25,000.00, which includes court fees, court reporter charges, mediation fees, and travel expenses. According to class counsel, the actual costs incurred exceeded the amount requested by $5,245.78. Yoon Decl. ¶ 9. Attorneys are entitled "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee

---

amendments but sought to clarify the employment relationship of Defendant Home Depot. (Doc. 28). On February 3, 2015, the Court granted Plaintiff leave to amend. (Doc. 28).

paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (citation omitted). Plaintiffs should support an expense award by submitting an itemized list of their expenses by category and the total amount advanced for each category, which allows the Court to assess whether the expenses are reasonable. *See, e.g.*, *Lopez v. Bank of America, N.A.*, 2015 WL 5064085, * 7 (N.D. Cal. Aug. 27, 2015).

Previously, this Court noted cost "including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed in these types of cases." *Alvarado v. Nederend*, 2011 U.S. Dist. LEXIS 52793, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011). Upon review, it appears that the primary expenses incurred resulted from mediation, travel and expert fees. Accordingly, the request for litigation costs in the amount of $25,000 is GRANTED.

### 4. Enhancement Awards

Named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Incentive awards "are discretionary ... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted). District courts must evaluate incentive awards individually, using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

Class Counsel requests that the Court confirm the enhancement award of $20,000.00 to compensate Plaintiff for his efforts on behalf of the class. (Doc. 53 at 18). At the preliminary approval hearing, the Court noted that this is significantly more than typical enhancement awards in the Ninth Circuit, where $5,000 is presumptively reasonable. *See Harris v. Vector Marketing Corp.*, 2012 U.S. Dist. LEXIS 13797, 2012 WL 381202, at *7 (N.D. Cal. 2012) ("Several courts in this District have indicated that incentive payments of $25,000 are quite high and/or that, as a general

matter, $5,000 is a reasonable amount.") (citations omitted). The Court provided Plaintiff with an opportunity to provide a more detailed declaration describing the risks Plaintiff faced as class representative, whether he signed a broader release than unnamed class members, any specific activities he performed as class representative and other factors the Court should consider when determining the reasonableness of an enhancement award. (Doc. 52 at 12-16).

In a supplemental declaration filed on September 11, 2016 and echoed by Plaintiff in a later declaration, class counsel explained that Plaintiff researched the discrepancies in his pay stubs for over a year before filing a complaint with the labor commissioner. *See* Declaration of Kenneth Yoon ("Yoon Decl."), ¶ 5 (Doc. 46). Plaintiff further believes a $20,000 enhancement award is appropriate because he played a pivotal role in the initiation of this lawsuit. He faced great difficulty in obtaining records to substantiate his claims before filing a complaint with the labor commissioner for a claim of $20,766.14. *See* Declaration of James Richardson ("Richardson Decl."), ¶ 9, (Doc. 53-3). Plaintiff estimates that he spent approximately 130 hours pursuing this action over a period of three years. During that time, Plaintiff, attempted to gather documents for discovery in this action, had numerous telephonic meetings with class counsel, and participated in all stages of litigation. Richardson Decl. ¶ 19-22.

Beyond investing time in the litigation, Plaintiff further explains that he has suffered financially by bringing this action. Once suit was filed in this Court, Plaintiff suffered a cutback in his hours, which he believes was in retaliation for initiating this action. Richardson Decl. ¶ 17. Further, Plaintiff released his rights to his claim with the labor commissioner, valued at over $20,000.00.

While the Court is unwilling to award Mr. Richardson the requested $20,000, the Court will credit the efforts made by Plaintiff and award a $15,000 enhancement award for several reasons. First, an award of $15,000 is only three times the amount the average class member will receive. Accordingly, there is not a large discrepancy between the Court's incentive award and the amount awarded to class members. *See Ko v. Natura Pet Prods.*, 2012 U.S. Dist. LEXIS 128615 (N.D. Cal. Sept. 10, 2012) (denying $20,000 incentive award where class members were expected to receive $35). Thus, in light of Plaintiff's significant efforts, an award of $15,000 does not appear grossly

disproportionate to the estimated average recovery of other individual class members of approximately $5,000.

Second, settlement included a broad personal release of Plaintiff's claims valued at a minimum of $20,766.14. The Court thus believes an award higher than the presumptive $5,000 enhancement is warranted to compensate for claims Plaintiff was unable to bring because he committed to proceeding as the named Plaintiff. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (reducing a request for a $20,000 enhancement award to $15,000 where the named Plaintiff brought a class claim in lieu of bringing an individual action). Finally, Plaintiff appears to have been significantly involved in this litigation. He estimates over 130 hours in bringing this case to a resolution.

Based on these considerations, the Court finds that an award of $15,000 is appropriate to compensate Plaintiff for the time and effort he spent.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1.      Plaintiff's Motion for Final Approval of the Settlement Agreement is **GRANTED**;

2.      The terms of the proposed Settlement Agreement are found to be fair, adequate and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

3.      Plaintiff's request for certification of the Settlement Class is **GRANTED** and defined as follows:

> plaintiff and any individuals employed by THD At-Home Services, Inc. and/or Measure Comp, LLC as measure techs in California at any time between January 23, 2010 and July 16, 2015, excluding any persons whose claims were released in connection with the class settlement in *Mejia v. MeasureComp, LLC*, Los Angeles Superior Court, No. BC 409729.

4.      For purposes of the settlement, the above-defined settlement class be found to meet all of the requirements of Rule 23(a) and 23(b)(2).

5.      The notice provided to the settlement class members, as well as the means by which it was provided, constitutes the best notice practicable under the circumstances and is in full compliance with the United States Constitution and the requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure. Further, that such notice fully and accurately

informed settlement class members of all material elements of the lawsuit and proposed class action settlement, and each member's right and opportunity to object to the proposed class action settlement;

6.      Plaintiff James Richardson is appointed as suitable representative for the Settlement Class;

7.      Kenneth H. Yoon and Stephanie E. Yasuda, Law Offices of Kenneth H. Yoon are appointed as class counsel for the settlement class;

8.      The settlement of civil penalties in the amount of $7,500.00 as the State's portion of the PAGA payment paid to the State of California Labor and Workforce Development Agency;

9.      The Court finds that the settlement administrator is entitled to $8,000 for administrative fees;

10.     The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

11.     Plaintiffs' motion for attorneys' fees, costs and expenses, and class representative incentive awards be **GRANTED IN PART and DENIED IN PART** as follows:

      a.      Reasonable attorneys' fees in the amount of $345,000.00 and costs in the amount of $25,000 be awarded to Plaintiff's counsel, the Law Offices of Kenneth H. Yoon; and

      b.      An incentive awards of $15,000 to James Richardson consistent with the terms of the Settlement Agreement; and

12.     This action be dismissed with prejudice and judgment entered in accordance with the terms of the agreement; however, the Court shall retain continuing jurisdiction to interpret, implement and enforce the settlement, and all orders and judgment entered in connection therewith.

IT IS SO ORDERED.

Dated:   **April 5, 2016**           /s/ *Barbara A. McAuliffe*

                                      UNITED STATES MAGISTRATE JUDGE